```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
UNITED STATES OF AMERICA,                   :
                                            :
                                            :       **MEMORANDUM**
              - against -                   :       **DECISION & ORDER**
                                            :
                                            :       18-cr-0096 (BMC)
JAMEL ROBERTS,                              :
                                            :
                          Defendant.        :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendant Jamel Roberts has moved to suppress evidence of a gun that police recovered after they searched a car he was driving on December 9, 2017, as well as certain statements that he made after he was arrested. That motion is now before me on the report and recommendation of Magistrate Judge Cheryl L. Pollak, in which she recommended that I deny the motion to suppress because the officer had probable cause to search the vehicle, or, alternatively, that the search of the car was permissible as a "protective frisk" or that the gun was in plain view. Defendant made specific objections to the report and recommendation. The Court concludes that, through the collective knowledge doctrine, Officer Varghese had reasonable suspicion to conduct a protective search of the car, and therefore adopts that portion of the report and recommendation and denies defendant's motion to suppress.

## DISCUSSION

This opinion assumes the parties' familiarity with the underlying facts and the report and recommendation. When a party makes specific objections to a report and recommendation, the district court makes a "*de novo* determination" of the objected-to portions. 28 U.S.C. § 636(b)(1); Federal Rule of Criminal Procedure 72(b)(2). Defendant urges me to reject the

report and recommendation on the grounds that: (1) the officers lacked probable cause to search his car; (2) the officers lacked reasonable suspicion of dangerousness or the presence of a weapon to conduct a protective search of the car, that, even if Officer Bellevue had the necessary reasonable suspicion, it could not be imputed to Officer Varghese, the officer who actually conducted the search; and (3) that the gun Officer Varghese found was not in plain view.[1] The Court need not address whether the officers had probable cause to search the car or whether the gun was in plain view because, under the collective knowledge doctrine, Officer Varghese had reasonable suspicion to conduct a protective search of the car.

Under Michigan v. Long, 463 U.S. 1032, 1049 (1983), an officer may conduct a protective search of the passenger compartment of a car during a traffic stop if the officer has reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon. The protective search must be limited to the areas where a weapon may be hidden. Id. The standard for reasonable suspicion in this context is the same as for Terry stops – "a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in their belief." Id. (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). "Although a mere hunch does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Navarette v. California, 572 U.S. 393, 397 (2014) (internal quotation marks and citations omitted).

---

[1] Counsel for defendant stated at the July 26, 2018 oral argument that defendant does not dispute the officers' testimony about what happened. The report and recommendation credits the officers' testimony in its entirety and this Court adopts that finding.

A car occupant's "furtive movement," such as dipping his torso forward "as if placing an object on the floor," can provide reasonable suspicion of dangerousness and the presence of a weapon where the officer cannot see the occupant's hands or the object. United States v. Paulino, 850 F.2d 93, 94, 98 (2d Cir. 1988); see also United States v. Edmonds, 240 F.3d 55, 61 (D.C. Cir. 2001) ("'[F]urtive' gestures in response to the presence of the police can serve as the basis of an officer's reasonable suspicion.").

Under the collective knowledge doctrine, a court may "impute an officer's knowledge to another officer who actually makes a stop or conducts a search, even if the latter does not possess all the relevant facts." United States v. Hussain, 835 F.3d 307, 316 n.8 (2d Cir. 2016). Therefore, one officer's reasonable suspicion, premised on facts that he knows, can support another officer's protective search, even if the searching officer is not aware of the specific facts that formed the basis for his fellow officer's reasonable belief as long as the first officer conveys the fact of his suspicion to the searching officer. But the collective knowledge doctrine does not apply where "there is no evidence that an officer has communicated his suspicions with the officer conducting the search, even when the officers are working closely together at a scene." Id.

Officer Bellevue testified at the hearing that, after he and his partner initiated the traffic stop and as they approached the car, he saw the outline of one of the two occupants make a "dipping" motion with his torso, as if leaning forward toward the footwell. He testified that, in his experience, someone would dip their body down during a car stop if "they're attempting to conceal contraband." (Although he did not see the "dipping" or any other movement in the car, Officer Varghese similarly testified that, in his experience, someone would dip their body down during a car stop if "[t]hey're trying to hide something"). Officer Bellevue also testified that

3

defendant did not roll down the car window until Officer Bellevue tapped on it; that he presented an ID card rather than a driver's license; that he had to be asked twice to get out of the car; and that he had driven the wrong way down a one-way street. Under Second Circuit precedent, the "dipping motion" in this context (as if bending down toward the footwell), is a furtive movement, and can by itself provide reasonable suspicion to support a protective search.[2] See Paulino, 850 F.2d at 94, 98.

Defendant argues that the Court should disregard Paulino's discussion of furtive movements and reasonable suspicion as mere dicta because the Second Circuit ultimately resolved the suppression issue in that case based on the defendant's lack of a reasonable expectation of privacy. Defendant's position is undermined by the fact that the Second Circuit panel in the Hussain case found it necessary to distinguish the facts before it, where the officers could see what the defendant was holding in the hand that he was moving toward the center console, from Paulino's, where "the officer was unable to see [the defendant's] hands or the object." Hussain, 835 F.3d at 315 (quoting Paulino, 850 F.2d at 94). Even if the conclusion in Paulino is not binding, the Court finds it persuasive.

Defendant argues that this case is more like Hussain (where the Second Circuit concluded that the officers lacked reasonable suspicion for a protective search) than Paulino, because (1) there was no testimony that this stop took place in a high-crime neighborhood and (2) it was less clear in this case than in Paulino that one of the vehicle's occupants was concealing something.

As to the first point, it is not clear that the Paulino Court relied on that fact to support the protective search. Although defendant is correct that both the majority and concurring opinion

---

[2] To the extent Magistrate Judge Pollak implicitly found that the "dipping" motion could support a reasonable belief that one or both of the vehicle's occupants was both dangerous and had access to a weapon, the Court adopts that finding. To the extent that she did not, this Court so finds.

4

mention some point that the stop occurred in a "high crime area," the majority does not discuss it in the reasonable suspicion portion of the opinion and refers only to the defendant's "furtive movement" as the "legal basis for the protective search." But even assuming that this context was relevant to the Paulino Court's conclusion (a fair assumption given that reasonable-suspicion or probable-cause analyses always include the totality of the circumstances), there were comparable circumstances here, in addition to the "dipping" motion, that supported Officer Bellevue's reasonable suspicion: defendant did not roll down the car window as the officers approached, which Officer Bellevue testified was, in his experience, not typical, that defendant had to be asked twice before he got out of the car, and that defendant had presented an ID card rather than a driver's license; that he had to be asked twice to get out of the car; and that he had driven the wrong way down a one-way street. Although none of these facts individually would amount to reasonable suspicion, in light of the dipping movement (which, as previously stated, may be enough on its own), they certainly supported Officer Bellevue's reasonable suspicion that one or both of the occupants could be dangerous and have access to a firearm.[3]

As to defendant's second point – that this case is more like Hussain than Paulino, the Court disagrees. In Hussain, the officers made two positional or movement-oriented observations: the passenger was sitting in an "unnatural position" (as if covering or hiding something) and the driver was "mov[ing] his arm towards the center console area of the car," but it was clear to the officers that the driver was holding a cell phone and not a weapon. In Hussain, the defendant took "5 to 10 seconds" to pull over after the officers turned on their lights and

---

[3] Defendant also argues that the officers did not testify that they were concerned for their safety; defendant cites out-of-circuit courts that concluded that the officers must have a subjective fear to justify a protective search of the vehicle. Given that (as defendant acknowledges), Fourth Amendment case law generally applies an objective, rather than a subjective analysis, see, e.g., Whren v. United States, 517 U.S. 806, 813 (1996); Hudson v. N.Y.C., 271 F.3d 62, 68 (2d Cir. 2001), and cites no Supreme Court or Second Circuit cases to the contrary, the Court does not see how this lack of testimony is probative.

5

failed to respond right away when the officers asked him to put down his phone and hand over his license and registration. The Second Circuit concluded that this slight delay in responding to the officers' requests, combined with the passenger's odd positioning and the driver's motions toward the center console, were not enough to support reasonable suspicion that either the driver or passenger were dangerous. The <u>Hussain</u> Court distinguished <u>Paulino</u> on the ground that in <u>Paulino</u>, the defendant was observed "in the back seat moving his torso and bending over as if placing an object on the floor," but "the officer was unable to see [the defendant's] hands or the object." 850 F.2d at 94. This case is more like <u>Paulino</u> because Officer Bellevue saw one of the car's occupants dipping his torso forward, and, unlike in <u>Hussain</u>, could not identify the object that the moving occupant might be holding. It was those furtive movements, which, based on his experience, Officer Bellevue reasonably interpreted to be an occupant attempting to conceal contraband that he could not see, and therefore (as in <u>Paulino</u>) constituted reasonable suspicion that defendant had access to a weapon and was dangerous.

Of course, Officer Bellevue was not the officer who searched the "grabbable area" of the car. As in <u>Hussain</u>, the officer who observed the suspicious movements or position was not the one who conducted the search. But unlike in <u>Hussain</u>, where there was no evidence of any communication between the officers, here Officer Varghese testified that Officer Bellevue gave him the "thumbs up" signal and that he (Officer Varghese) understood that to mean that the driver and passenger should be removed and that "there was possible contraband or evidence of a crime in the car." Through the "thumbs up" signal, Officer Bellevue communicated his suspicion to Officer Varghese; Officer Bellevue's reasonable suspicion of the car occupants' dangerousness and the presence of a weapon is therefore imputable to Officer Varghese and provides the legal basis for Officer Varghese's protective search during which he discovered the

gun. Because Officer Varghese's search was a lawful protective search of the "grabbable area" of the car, there are no grounds to suppress the gun that he found or the statements defendant made after it was found.[4]

## CONCLUSION

The report and recommendation [38] is adopted in part; defendant's motion to suppress [18] is DENIED.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
September 21, 2018

---

[4] Defendant conceded in his opposition that if the firearm is admissible, his post-arrest statements are admissible too.